**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5467-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KIMBERLY A. WATSON,
a/k/a KIMBERLY WATSON,

     Defendant-Appellant.

_____

Submitted September 27, 2021 – Decided July 18, 2022

Before Judges Sumners, Vernoia and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 15-06-0426.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Daniel Finkelstein, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Kimberly A. Watson of second-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a). At sentencing, the court imposed a nine-year prison term with a three-year period of parole ineligibility, and ordered defendant pay $2,606,856 in restitution.

Defendant appeals from her conviction and sentence, arguing the court erred by: denying her motion to dismiss the single-count indictment on speedy trial grounds; denying her motion to suppress her statements to the police during a custodial interrogation; granting the State's motion for admission of evidence prepared by Sears, Roebuck and Co. (Sears), her employer and the victim of the alleged theft; denying her motion to strike testimony as an inadmissible expert opinion; improperly instructing the jury concerning its review of the recording of defendant's statement to the police during deliberations; imposing an excessive sentence; and ordering restitution without a restitution hearing. Having considered the parties' arguments, the record, and the guiding legal principles, we affirm in part, reverse in part, and remand for a new trial.

I.

A grand jury charged defendant in an indictment with second-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a). The indictment alleged that between June 1, 2012 and October 16, 2014, defendant unlawfully took or exercised

2

control over Sears's property valued in excess of $75,000. At the time of the alleged offense, defendant was employed by Sears as an inventory clerk at its Logan Township distribution center. As part of her job duties, defendant was responsible for the distribution center's inventory and the delivery of products sold from Sears's retail locations.

The genesis of the criminal charge against defendant was an investigation made by Sears's loss prevention unit, in conjunction with the Logan Township Police Department (LTPD) and the Gloucester County Prosecutor's Office, into a report of an alleged "scheme" by "[a]n employee . . . [who] had defrauded Sears to the tune of millions of dollars . . . in retail products from the distribution center."

On October 16, 2014, following the interdiction of a "fraudulent delivery" of Sears merchandise by law enforcement, defendant was interviewed by Sears loss prevention personnel. James Perillo, a Sears regional loss prevention manager, participated in the interview of defendant. Perillo testified at trial that during the interview, defendant admitted to arranging to have Sears merchandise fraudulently delivered to individuals who had not paid Sears but who instead paid a percentage of the merchandise's retail price directly to her. Defendant

3

told Perillo she had done this for "approximately two years" and she had caused a "loss to the company" in the millions of dollars.

After her interview with the Sears loss prevention unit, defendant was brought to the LTPD for what turned out to be a custodial interrogation. The interrogation was recorded and conducted by Sergeant Joseph Lombardo of the LTPD and Detective Brin Wilden of the Gloucester County Prosecutor's Office. The recording was played for the jury during defendant's trial.

Wilden testified that during the interrogation defendant was advised of her Miranda[1] rights, and waived those rights. Wilden also testified defendant explained how, beginning in 2012, she utilized her access to Sears's computer system and inventory to create orders which caused Sears merchandise to be delivered to individuals who had not paid Sears, but who instead paid defendant a percentage of the retail price of the merchandise. Immediately following the interrogation, the LTPD arrested defendant and charged her with second-degree theft.

On June 10, 2015, the grand jury returned the indictment against defendant. Almost two years later, on May 26, 2017, the court heard argument on defendant's motions to dismiss the indictment on speedy trial grounds and to

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-5467-18

suppress her statements to the police during the custodial interrogation at the police station.

On the same day, the court also heard argument on the State's motion for leave to admit at trial five reports compiling information that had been automatically entered into Sears's computer system as orders were processed or were otherwise contemporaneously entered in the system. More particularly, the court considered the State's request for permission to admit the following exhibits at trial: S-1, a report containing certain "record[s] of returns" documenting customer returns or exchanges that Sears created using "quer[ies]" to search its business records; S-2, which was similarly created by Sears through the use of queries to search its business records, and which contained certain "CME 78's," or "credit memo transactions" which are used by Sears to maintain and adjust the records of its inventory; S-3, a report of "fraudulent records of returns," which consolidated the records in S-1 and S-2 and matched fraudulent records of return to their corresponding credit memo transactions; S-4, which contained payroll records, in particular, the "time card records for [defendant]"

5

showing the times she was working at the Sears distribution center; and S-5, which contained "screenshots of a particular delivery transaction."[2]

In support of its motion for leave to admit the exhibits, the State presented Perillo as a witness, and the State argued the exhibits were admissible as Sears's business records under N.J.R.E. 803(c)(6), or alternatively, under N.J.R.E. 1006 as summaries of documents, which would amount to "tens of thousands of" pages if individually printed. The court granted the State's motion, finding S-1 through S-5 admissible as business records, N.J.R.E. 803(c)(6), and, alternatively, as summaries of documents, N.J.R.E. 1006.

The court also denied defendant's motion to suppress her statements to the police made during the police station interrogation. The court rejected defendant's contention her statements should be suppressed because the police officers failed to scrupulously honor her invocation of the right to counsel. The court found that defendant's statement to the police, "Do you remember on that thing that you were asking me at the time I was wondering if I could speak with a lawyer before I went any farther," did not constitute an invocation of her right

---

[2] We note the appellate record does not include exhibits S-1 to S-5. See R. 2:6-1(a)(1)(I) (requiring the appellant's appendix or any joint appendix on appeal include "such . . . parts of the record . . . as are essential to the proper consideration of the issues").

A-5467-18

to counsel. The court also reasoned that even if the statement constituted an equivocal invocation of the right to counsel, the officers properly sought clarification from defendant about her intentions to proceed with or without counsel, and defendant indicated she wished to continue the interrogation without counsel.

The court also denied defendant's speedy trial motion, addressing the factors pertinent to a determination of the request under the standard established in Barker v. Wingo, 407 U.S. 514, 530 (1972).[3] The court made findings as to each of the factors and determined they did not weigh in favor of a finding defendant's right to a speedy trial had been violated under the totality of the extant circumstances.

The court conducted defendant's jury trial over six days in March 2019. The State presented three witnesses. Wilden testified about the investigation into defendant's fraudulent deliveries and the police station interrogation of defendant during which she described how she committed the theft of Sears's merchandise. The recording of the interrogation was played for the jury.

---

[3] In Barker, the United States Supreme Court identified four factors that should be balanced to determine whether a defendant has been deprived of the right to a speedy trial: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530.

7

The State's second witness, Edwin Sam, was a night shift supervisor at the Sears distribution center where defendant worked. He explained he allowed defendant to use his password to access Sears's computer system, and he did not have any involvement with the entry or modification of records of return or credit memo transactions. Sam's testimony corroborated statements made by defendant during the police station interrogation, during which she admitted to using Sam's password to create fraudulent orders. Based on Sam's testimony, the State argued that any records of return or credit transaction memos entered under his employee identification number in the Sears system were entered by defendant.

The State's final witness, Perillo, testified about the Sears loss prevention unit's investigation into the fraudulent deliveries. He testified concerning defendant's inculpatory statements during the initial October 16, 2014 interview conducted by Sears loss prevention personnel. He also testified about exhibits S-1 through S-4—exhibits the court determined were admissible under N.J.R.E. 803(c)(6) and N.J.R.E. 1006—and he explained how the exhibits demonstrated fraudulent deliveries were entered on at least eleven days defendant worked and totaled $172,383 in losses to Sears. He also defined the terminology used in exhibits S-1 through S-3 as part of his explanation concerning the information

8

shown in the exhibits. He further testified the fraudulent deliveries were charged to Sears's "online business" to conceal the percentage of merchandise lost to the company.

Defendant did not present any witnesses at trial. The jury found defendant guilty of second-degree theft by unlawful taking of property in excess of $75,000. As noted, the court imposed a nine-year prison term with a three-year period of parole ineligibility and ordered that defendant pay $2,606,856 in restitution to Sears. The court did not conduct a restitution hearing. Its restitution order was based on the prosecutor's interpretation of the information contained in exhibits S-1 through S-3.

Defendant presents the following arguments for our consideration:

> POINT ONE
>
> THE TRIAL COURT ERRED IN FAILING TO STRIKE THE IMPERMISSIBLE EXPERT AND ULTIMATE OPINION TESTIMONY OF A LAY WITNESS.
>
> POINT TWO
>
> THE ADMISSION INTO EVIDENCE OF SEARS'[S] REPORTS, SPECIFICALLY MADE TO INVESTIGATE AND PROVE THE ALLEGED CRIMINAL ACTIVITY OF [DEFENDANT], AND THE TESTIMONY ABOUT THOSE REPORTS FROM A SEARS EMPLOYEE WHO DID NOT

MAKE THOSE REPORTS, VIOLATED [DEFENDANT]'S RIGHT TO CONFRONTATION.

POINT THREE

THE TRIAL COURT'S ADMISSION OF [DEFENDANT]'S STATEMENT VIOLATED HER CONSTITUTIONAL RIGHT TO COUNSEL. U.S. Const. Amends. V, XIV; N.J. Const. [a]rt. I, [¶] 1.

POINT FOUR

THE TRIAL COURT VIOLATED [DEFENDANT]'S RIGHT TO A FAIR TRIAL BY INSTRUCTING THE JURY THAT IT COULD NOT HEAR PARTS OF HER STATEMENT.

POINT FIVE

THE EXCESSIVE TIME DELAY OF ALMOST 4.5 YEARS BETWEEN [DEFENDANT]'S ARREST AND TRIAL VIOLATED HER RIGHTS TO A SPEEDY TRIAL AND TO DUE PROCESS. (U.S. Const. Amends. VI and XIV; N.J. Const. (1947), [a]rt. I, [¶] 10; R. 3:21-4.)

POINT SIX

THE TRIAL COURT ERRED IN FAILING TO HOLD A RESTITUTION HEARING AND IN IMPOSING $2,606,856[] IN RESTITUTION.

POINT SEVEN

THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A MANIFESTLY EXCESSIVE SENTENCE.

II.

We first address defendant's challenge to the court's denial of her motion to dismiss the indictment on speedy trial grounds. "The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and imposed on the states by the Due Process Clause of the Fourteenth Amendment." State v. Tsetsekas, 411 N.J. Super. 1, 8 (App. Div. 2009) (citing Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967)). This "right . . . attaches upon defendant's arrest." Ibid. (quoting State v. Fulford, 349 N.J. Super. 183, 190 (App. Div. 2002)); State v. Szima, 70 N.J. 196, 199-200 (1976).

Speedy trial claims are governed by the Barker four-factor balancing test, which, as noted, requires consideration of the "[l]ength of delay, the reason for the delay, the defendant's assertion of his [or her] right, and prejudice to the defendant." 407 U.S. at 530; State v. Cahill, 213 N.J. 253, 258 (2013); Szima, 70 N.J. at 201. In applying this standard, "a trial court must weigh the 'societal right to have the accused tried and punished' and a defendant's right to be prosecuted 'fairly and not oppressively.'" Tsetsekas, 411 N.J. Super. at 10 (quoting State v. Dunns, 266 N.J. Super. 349, 380 (App. Div. 1993)). "No single factor is a necessary or sufficient condition to the finding of a deprivation of the

11

right to a speedy trial"; instead, "the factors are interrelated, and each must be considered in light of the relevant circumstances of each particular case." Ibid.

We review the court's assessment and balancing of the Barker factors deferentially, see Doggett v. United States, 505 U.S. 647, 652 (1992), and we will reverse a trial court's determination as to whether a defendant has been deprived of a speedy trial "only if the court's determination is clearly erroneous," Tsetsekas, 411 N.J. Super. at 10 (citing State v. Merlino, 153 N.J. Super. 12, 17 (App. Div. 1977)). While we "have been loath to sponsor the more severe sanction of dismissal because the demands of justice require adjudications on the merits to the greatest extent possible," State v. Farrell, 320 N.J. Super. 425, 447 (App. Div. 1999), where there is a violation of the right to a speedy trial, "dismissal of the indictment . . . is the only possible remedy," Barker, 407 U.S. at 522.

Defendant does not challenge any of the court's factual findings supporting its denial of her speedy trial motion; she instead claims the court erred in weighing the Barker factors and the factors required dismissal of the indictment. She argues there were lengthy delays following her arrest; the reason for the delays was largely "due to the [S]tate's failure to provide discovery to the defense"; she asserted her right to a speedy trial in October 2014

and June 2015; and she suffered prejudice during the pendency of the charges due to difficulty obtaining employment and supporting herself, excessive legal fees, and the "extreme anxiety and humiliation" brought on by "excessive court dates and waiting for trial." We reject defendant's arguments and affirm the court's denial of her speedy trial motion.

Defendant claims the length of the delay in bringing the matter to trial weighs in favor of dismissal. She was arrested in October 2014, and the court heard her motion to dismiss on speedy trial grounds thirty-one months later in May 2017. Our Supreme Court has "recognized that longer delays can be tolerated for serious offenses or complex prosecutions," and it has held that "once the delay exceeds one year, it is appropriate to engage in the analysis of the remaining Barker factors." Cahill, 213 N.J. at 265-66. Additionally, our Supreme Court has expressly declined to establish a fixed amount of time in which a defendant must be tried or in which defendant's speedy trial rights are presumptively violated. Id. at 269.

Here, the court found the length of the delay in bringing the matter to trial was at least in part explained by the complexity of the case against defendant. Although defendant was charged in a single count, the court noted defendant was accused of causing millions of dollars of losses to Sears over the course of

more than two years, and Sears was required to review several thousand fraudulent transactions to determine the nature and extent of defendant's actions. Defendant does not dispute the court's finding or that the nature of the crime charged required consideration of thousands of transactions occurring over a multi-year period.

Moreover, consideration of the interrelated second factor, the reason for the delay, supports the court's conclusion the length of the delay was not unreasonable. Under Barker's second factor, reason for the delay, "because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." Barker, 407 U.S. at 530-31; Cahill, 213 N.J. at 265 ("[T]he lapse of time that might trigger a violation of the constitutionally guaranteed speedy trial right depends on the nature of the charges lodged against the defendant"). As noted, defendant was charged with committing an extensive course of unlawful takings; allegedly involving thousands of transactions over the course of two years, all of which she attempted to conceal. See Barker, 407 U.S. at 531 ("The delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge"); State v. Gaikwad, 349 N.J. Super. 62, 88

(App. Div. 2002) (holding "the complexity of the subject matter of the case" may render a delay reasonable).

The court also found additional reasons for the delay, many of which were attributable to defendant. "[A]ny delay that defendant caused or requested would not weigh in favor of finding a speedy trial violation." State v. Long, 119 N.J. 439, 470 (1990) (quoting State v. Gallegan, 117 N.J. 345, 355 (1989)). The motion court found the proceedings were delayed by nine-months due to defendant's prosecution of her application to drug court, and that "many of the adjournments" of the trial related proceedings "were at the defense's request." The requested adjournments were to allow defendant to obtain additional discovery defendant sought from Sears that, as defendant conceded during the motion hearing, was discovery not in the State's possession.

Again, defendant does not challenge the court's findings or point to a single circumstance during the pretrial proceedings where actions by the State resulted in an adjournment or delay. Cf. Barker, 407 U.S. at 531 (explaining "deliberate attempt[s] to delay in order to hamper the defense should be weighted heavily against" the State). And, the court affirmatively found, "[t]here is absolutely no indication that the prosecution intentionally delayed the proceedings to gain an unfair, tactical advantage."

15

The court also considered Barker's third factor—defendant's assertion of the right to a speedy trial. The court noted defendant included a request for a speedy trial in her counsel's initial letter of representation and request for discovery on October 20, 2014, and in a June 22, 2015 letter to the Gloucester County Prosecutor's Office, but defendant did not file her speedy trial motion until March 10, 2017.

In analyzing whether a defendant properly invoked his or her speedy trial right, a court may consider "the frequency and force of the [defendant's] objections." Barker, 407 U.S. at 529. "Whether and how a defendant asserts his right is closely related" to the length of the delay, the reason for the delay, and any prejudice suffered by defendant. Id. at 531.

Here, we are unable to assess the force of defendant's speedy trial requests because the October 24, 2014 and June 22, 2015 letters to which the motion court made reference, and upon which defendant relies, are not included in the record on appeal. See R. 2:6-1(a)(1)(I); Soc'y Hill Condo. Ass'n v. Soc'y Hill Assocs., 347 N.J. Super. 163, 177-78 (App. Div. 2002). Thus, we are unable to determine if the demands were anything more than "pro forma" assertions of the right to a speedy trial. See Barker, 407 U.S. at 528-29 (discouraging the

16

attachment of "significant weight to purely pro forma" assertions of the right to a speedy trial).

In any event, because there appears to be no dispute the letters included some assertion of defendant's speedy trial right, the third factor weighs in defendant's favor. See ibid. However, any weight under the third Barker factor that might otherwise inure in defendant's favor is necessarily tempered, and substantially so, by the court's finding that many of the delays were the result of defendant's actions and requests, including her application to the drug court program and the adjournments she sought to obtain discovery from Sears, and the court's determination the State took no action to delay the proceedings. Defendant cannot delay the proceedings, and, at the same time, claim she made credible requests for a speedy trial that should be given great weight in the analysis required under Barker. See generally id. at 527 (explaining "[i]f counsel is willing to tolerate some delay because he finds it reasonable and helpful in preparing his own case, he may be unable to obtain a speedy trial for his client at the end of that time").

The court also found defendant did not demonstrate prejudice weighing in favor of dismissal under Barker's fourth factor. "[P]rejudice is assessed in the context of the interests the [speedy trial] right is designed to protect," Cahill,

213 N.J. at 266, including "prevention of oppressive incarceration, minimization of anxiety attributable to unresolved charges, and limitation of the possibility of impairment of the defense," ibid.

Here, defendant was not incarcerated while she awaited trial, and she offered no evidence the delay in bringing the matter to trial impaired her ability to defend her case. See Szima, 70 N.J. at 202 (rejecting a speedy trial claim in part based on the fact a defendant was not incarcerated during the twenty-two-month delay, and he claimed "no impairment to his ability to defend"). Moreover, defendant did not present the motion court with any competent evidence she was unable to find work, was unable to support herself, incurred an inordinate amount of legal fees, or suffered excessive anxiety or humiliation as a result of the charge pending against her. We recognize that "significant prejudice may . . . arise when the delay causes the loss of employment or other opportunities, humiliation, the anxiety in awaiting disposition of the pending charges, the drain in finances incurred for payment of counsel or expert witness fees," Tsetsekas, 411 N.J. Super. at 13, but defendant does not cite to any competent evidence, see R. 1:6-6, supporting her conclusory claims of prejudice.

Based on our review of the record and balancing of the applicable factors, we find nothing "clearly erroneous" in the court's disposition of defendant's

speedy trial claim. Tsetsekas, 411 N.J. Super. at 10. The court considered and found the factors, balanced them, and concluded they did not warrant dismissal of the indictment. Defendant offers no basis to reverse the court's determination.

III.

Defendant argues the court erred by denying her motion to suppress the statements she made during the October 16, 2014 custodial interrogation. She claims she invoked her right to counsel and Wilden failed to "scrupulously honor" the invocation because he failed to cease questioning and he used her request for counsel "as an opportunity to manipulate her into further interrogation."

When reviewing a trial court's denial of a motion to suppress, our "scope of review . . . is limited." State v. Ahmad, 246 N.J. 592, 609 (2021). We "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." Ibid. (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Factual findings of the trial court should only be set aside when those findings are "clearly mistaken." State v. Zalcberg, 232 N.J. 335, 344 (2018) (quoting State v. Hubbard, 222 N.J. 249, 262-63 (2015)). Factual findings based on "[v]ideo-recorded evidence is reviewed under the same standard." State v. Hagans, 233 N.J. 30, 38 (2018)

19

(citing State v. S.S., 229 N.J. 360, 381 (2017)). We owe no such deference to a trial court's legal interpretations, which we review de novo. State v. Hathaway, 222 N.J. 453, 467 (2015).

The Fifth Amendment guarantees the "privilege against self-incrimination," and the United States Supreme Court's opinion in Miranda, 384 U.S. at 444, provides the "framework for our analysis." State v. Alston, 204 N.J. 614, 619 (2011). Under Miranda, law enforcement must "advise suspects subject to custodial interrogation that they possess certain fundamental rights, including the right to an attorney—even an appointed attorney if they were unable to afford one." State v. Rivas, ___ N.J. ___, ___ (2022) (slip op. at 27). "[I]f the accused 'indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.'" Alston, 204 N.J. at 619-20 (quoting Miranda, 384 U.S. at 444-45).

In this state, the privilege against self-incrimination "offers broader protection that its Fifth Amendment federal counterpart." State v. O'Neill, 193 N.J. 148, 176-77 (2007). "Under our state law privilege against self-incrimination, 'a suspect need not be articulate, clear, or explicit in requesting counsel; any indication of a desire for counsel, however ambiguous, will trigger entitlement to counsel.'" Rivas, ___ at ___ (slip op. at 27) (quoting Alston, 204

N.J. at 622). "[I]f a suspect's 'words amount even to an ambiguous request for counsel, the questioning must cease,' unless the officer makes additional neutral inquiries that clarify that the suspect desires to waive the presence of counsel." Id. at 27-28 (quoting Alston, 204 N.J. at 624). "[T]he State bears the burden to show scrupulous compliance with" these requirements. State v. Dorff, 468 N.J. Super. 633, 651 (App. Div. 2021).

In determining whether a suspect has invoked their right to counsel, the court employs "a totality of the circumstances approach that focuses on the reasonable interpretation of defendant's words and behaviors." State v. Diaz-Bridges, 208 N.J. 544, 564 (2011). "[A]ny words or conduct that reasonably appear to be inconsistent with defendant's willingness to discuss his case with the police are tantamount to an invocation of the privilege against self-incrimination." Alston, 204 N.J. at 622 (quoting State v. Bey, 112 N.J. 123, 135 (1988)). "[B]ecause the right to counsel is so fundamental, an equivocal request for an attorney is to be interpreted in the light most favorable to defendant." State v. Wright, 97 N.J. 113, 119 (1984).

If an ambiguous invocation is made, further questioning of a suspect is only permissible if those further questions are aimed at clarifying the meaning of the statement. Alston, 204 N.J. at 623. Such clarification is necessary where

21

the statement "leave[s] the investigating officer 'reasonably unsure whether the suspect was asserting that right.'" Diaz-Bridges, 208 N.J. at 564 (quoting State v. Johnson, 120 N.J. 263, 283 (1990)). In clarifying the meaning of a suspect's statement, an officer is limited "to neutral inquiries." Rivas, ___ N.J. at ___ (slip op. at 28). Critically, these clarifying inquiries must not "operate to delay, confuse, or burden the suspect in his [or her] assertion of his rights." Alston, 204 N.J. at 623 (quoting Johnson, 120 N.J. at 283).

Measured against these principles, the officers conducting the October 16, 2014 interrogation failed to scrupulously honor what we find, and what the State concedes, was defendant's equivocal invocation of her right to counsel. The officers properly informed defendant of her Miranda rights at the outset of the interrogation, but approximately twenty-one minutes after the interrogation began, defendant made an ambiguous invocation of her right to counsel, and Wilden's response impermissibly burdened defendant's assertion of that right. Ibid.

Defendant disputes the accuracy of the transcript of the interrogation relied on by the court in deciding the suppression motion, asserting the court misconstrued what was said. We have reviewed the recording of the interrogation that was considered by the court and, although we disagree with

the court's legal conclusions concerning the admissibility of defendant's statements, we accept the court's factual findings about what was said by defendant in the "audio/video" recording of the interrogation. S.S., 229 N.J. at 381.

At the outset of the interrogation, after being advised of and acknowledging her Miranda rights, defendant was asked by Wilden if she was "willing" to "answer some more questions," and he informed her that whether she did so was "entirely up to" her. He said he understood defendant told Sears loss prevention personnel she thought she "might need a lawyer at some point" and he asked if she wanted "to answer any . . . questions." She responded, "I will try my best until—I need a lawyer."[4]

In response to questions posed by Wilden, defendant then provided inculpatory statements concerning actions she took while employed at the Sears distribution center, including creating fraudulent deliveries in the Sears computer system to be sent to individuals who paid her a percentage of the delivered products' retail price. However, following these admissions, approximately twenty-one minutes into the recorded statement, defendant broke

---

[4] Defendant does not argue this statement constituted unambiguous invocation of her right to counsel.

off Wilden's questioning and said, "Do you remember on that thing that you were asking me and at the time I was wondering if I could speak with a lawyer before I went any farther."

We disagree with defendant's characterization of this statement as an unambiguous invocation of her right to counsel because even viewed in the light most favorable to defendant, we find the statement could have left Wilden "reasonably unsure whether the suspect was asserting that right." Diaz-Bridges, 208 N.J. at 564 (quoting Johnson, 120 N.J. at 283). However, we find, and the State concedes on appeal, defendant's statement, "I was wondering if I could speak with a lawyer before I went any farther" constitutes an ambiguous invocation of the right to counsel. See Dorff, 468 N.J. Super. at 649 (finding a suspect's declaration "[t]hat's why I feel I might need a lawyer" to be an invocation of their right to counsel).

Indeed, Wilden understood the statement as an equivocal invocation of defendant's right to counsel. In response to defendant's statement, Wilden first said, "Okay, [w]ell[,] that's up to you." That is, Wilden understood defendant's statement as at least an ambiguous assertion of her right to counsel because he told her "that[]"—the decision whether to have an attorney before she continued—was up to her. Wilden then continued,

24                                                    A-5467-18

since you mentioned lawyer [sic], that's why we communicated to you a lot of stuff earlier. If you feel like you need an attorney, I can't guide you either way on that. You can certainly understand that I can't do that. But if you want an attorney, absolutely we won't ask you any more questions, you can stop right now. That's up to you.

In response to Wilden's explanation, defendant then asked, "What's the difference, I mean?"

Wilden answered defendant's question, stating:

Well[,] the difference is, like I said when we came in here, I said I don't know if there's still things that maybe we can try and get back for Sears because at this point there's a lot of stuff that's been delivered over the last two years that we're probably not going to be able to get back for Sears.

And if there's any deliveries coming down the road in the future, maybe you can tell us, you know, at what point things are. Because the warehouse, a lot of this stuff, maybe if you tell us, maybe we can try and retrieve a substantial amount of inventory for Sears, <u>it may help us in the long run. And we can go and we can say [defendant] was cooperative with us, she provided us with a statement detailing what she did, and she made her best effort to try and obtain some of the goods back or prevent more goods from going out that were scheduled for delivery</u>, whether it's today, or tomorrow, or next week, or whatever the case may be.

I don't know what the case is. Maybe there is stuff in there, maybe there's not. But you have to, if you want a lawyer, certainly we're not going to get you one now, we'll just stop asking you questions. But I can't recommend yes or no whether or not you need an

attorney at this point. That's something you have to answer.

I just want to put it out to you, hey look, I can't promise you anything. Like this thing we read earlier, we can't promise you, we can't threaten you with anything. I'm going to say I don't know what your situation is. If there's things you think you can get back, it might help when it comes down later on[,] six months from now, a year from now, whatever the case may be, hey look, you know what, she did make an effort to try and help us out to get things back. That's all.

[(Emphasis added).]

What is missing from Wilden's response to defendant's equivocal invocation of her right to counsel is any effort to ask neutral clarifying questions to determine whether defendant had, in fact, invoked her right to counsel. Rivas, ___ N.J. at ___ (slip op. at 27-28). Wilden's statements went well beyond the limited scope of neutral questions that may be asked of a defendant who has ambiguously invoked the right to counsel during a custodial interrogation. Ibid.; Alston, 204 N.J. at 625-27. When confronted with the equivocal and ambiguous invocation, the officers were "required either to cease questioning or to pose only questions designed to clarify whether defendant was invoking her right to consult with an attorney." Dorff, 468 N.J. Super. at 652. Wilden recognized plaintiff's statement as an ambiguous invocation of her right to counsel, but he never sought to resolve the ambiguity and clarify whether her statement was

intended as an invocation of that right. See S.S., 229 N.J. at 382-83 (explaining when a suspect's statement constitutes an ambiguous invocation of the right to counsel "the interrogating officer must cease questioning and 'inquire of the suspect as to the correct interpretation'" of the statement (quoting Johnson, 120 N.J. at 283)).

Wilden's lengthy statement offered defendant reasons she should speak with him immediately, and outside the presence of counsel. Although he told defendant he could not promise her anything if she answered his questions, he nonetheless suggested defendant would benefit from cooperating because the officers could then "go and . . . say [defendant] was cooperative with us." That response impermissibly burdened defendant's assertion of her right to counsel. Alston, 204 N.J. at 623.

In fact, the officers never clarified whether defendant's initial statement constituted an invocation of her right to counsel. They simply never asked her to clarify whether her statement was intended as such. Rather, in response to defendant's statement, Wilden ignored the putative invocation, shifted the discussion to one about defendant's right to decide whether she wanted counsel, attempted to persuade her it was in her interest to answer the questions without counsel, and impermissibly suggested she would lose the benefit of providing

27

cooperation if she delayed responding to his questions and ended the interrogation to confer with counsel. That course of action was impermissible because, following defendant's ambiguous invocation of her right to counsel, the officers' only permissible task was to clarify whether defendant's statement constituted an invocation of her right. That task was never completed by the officers here.

The motion court therefore erred by denying defendant's motion to suppress those portions of her statement following her equivocal invocation of the right to counsel. We therefore must consider whether the error is harmless. "The test for determining whether an error is harmless 'is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" State v. Sanchez, 129 N.J. 261, 278 (1992) (quoting Chapman v. California, 386 U.S. 18, 23 (1967)); see also R. 2:10-2 (providing "[a]ny error . . . shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result").

Based on our review of the evidence, we are convinced that introduction of defendant's lengthy and detailed statements describing the manner in which she committed the numerous thefts that comprised the offense for which she was charged, as well as the amounts of the various thefts, contributed to her

28

conviction. The State's case was otherwise founded on Perillo's testimony, which is complicated, at times difficult to follow, and founded on his interpretation of data from business records. Moreover, defendant's payroll records show she was not present at the Sears distribution center on days some of the alleged fraudulent deliveries were entered into the center's computers.

In our view, although defendant made general admissions of guilt during her initial interview by the Sears loss prevention personnel and during the brief, preliminary questioning at the police station following the administration of her Miranda rights, any legitimate doubts the jury may have had about the strengths of the State's record-based evidence discussed by Perillo during his trial testimony, or on the evidence showing she was not working when the thefts were committed, were effectively eliminated by the detailed information and admissions defendant provided during the lengthy interrogation that followed her equivocal invocation of her right to counsel. We therefore conclude the admission of defendants' lengthy interrogation following her equivocal invocation of her right to counsel was clearly capable of producing an unjust result, and reverse defendant's conviction, R. 2:10-2; see O'Neill, 193 N.J. at 184; Sanchez, 129 N.J. at 278, and remand for a new trial.

IV.

Defendant argues the court erred by admitting exhibits S-1 through S-3, which, as noted, were prepared by Sears and used at trial to show fraudulent transactions were entered on days defendant was working and the total loss exceeded $75,000. Defendant argues the court erred by finding the exhibits admissible under the business records exception, N.J.R.E. 803(c)(6), and under the summaries of records exception, N.J.R.E. 1006, to the hearsay rule, N.J.R.E. 802. She further argues the admission of the exhibits violated her right to confront the witnesses against her because Perillo did not create the reports and the Sears employees who created the reports did not testify at trial. We review the court's challenged evidentiary rulings for an abuse of discretion. State v. Singh, 245 N.J. 1, 12 (2021).

We agree with defendant that exhibits S-1 through S-3 were not admissible as business records under N.J.R.E. 803(c)(6). The business records exception to the prohibition on hearsay provides that "[a] statement contained in a writing or other record of acts" will be admissible when it is established the record was: (1) "made at or near the time of observation"; (2) "by a person with actual knowledge or from information supplied by such a person"; (3) "the writing or other record was made in the regular course of business[;] and" (4)

30

"it was the regular practice of that business to make such writing or other record." N.J.R.E. 803(c)(6).

Printouts of records electronically stored and relied upon by businesses will ordinarily satisfy the requirements of N.J.R.E. 803(c)(6), see, e.g. New Century Fin. Servs., Inc. v. Oughla, 437 N.J. Super. 299, 327 (App. Div. 2014) (printouts of credit card statements admitted where supported by certifications of employees having personal knowledge of records and transactions); Garden State Bank v. Graef, 341 N.J. Super. 241, 245-46 (App. Div. 2001) (finding a bank's computer printouts of a customer's loan history admissible, and explaining, "computers are universally used and accepted, have become part of everyday life and work and are presumed reliable" (quoting Hahnemann Univ. Hosp. v. Dudnick, 292 N.J. Super. 11, 16 (App. Div. 1996))).

However, although Perillo testified the underlying information shown in exhibits S-1, S-2, and S-3, was obtained from business records satisfying the requirements of N.J.R.E. 806(c)(6), none of the exhibits was prepared "at or near the time of the occurrence"—the time the information was entered into the Sears computer system—or prepared in "the regular practice of that business." N.J.R.E. 803(c)(6). Although gleaned from business records, S-1 through S-3 were generated after the prosecution of defendant began, they contained

31

information going back as far as two years prior to the initiation of the prosecution, they were not prepared during the ordinary course of Sears's business, and they did not satisfy the requirements for the admission of business records under N.J.R.E. 803(c)(6). The court erred by finding those exhibits were admissible as business records under N.J.R.E. 803(c)(6).

Nonetheless, exhibits S-1 through S-3 were properly admitted as summaries under N.J.R.E. 1006, because they were "presented by a qualified witness to prove the content of voluminous writings or photographs that cannot conveniently be examined in court." In order to be admitted under the rule, "the proponent shall make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place or mode." N.J.R.E. 1006. As Perillo established during his testimony at the Rule 104 hearing on the admission of the exhibits, the information contained in each exhibit was reaped directly from records that qualify as business record under N.J.R.E. 803(c)(6), and the exhibits themselves merely assembled and contained summaries of portions of those business records pertinent to defendant's alleged years-long thefts from the distribution center.

We are not persuaded by defendant's claim the exhibits were inadmissible because she was denied access to the "underlying data." See N.J.R.E. 1006. The

record is bereft of evidence of any refusal by Sears to make the underlying data available to defendant, and the trial court otherwise expressly informed defendant it would provide counsel with "the ability . . . to go look at all the material that went into these documents and review them for trial," and advised counsel he "should take that chance" and "have an expert" review the material. A May 26, 2017 order further provided that "[d]efense counsel has [forty-five] days to review the underlying documents from Sears." There is no evidence Sears refused any effort by defendant to take advantage of the opportunity provided by the court to review underlying data summarized in exhibits S-1 through S-3. The court therefore did not abuse its discretion by admitting the exhibits under N.J.R.E. 1006.

We decline to address defendant's Confrontation Clause claim as to the admission of exhibits S-1 through S-3 because she failed to raise the argument at trial. See State v. Carrion, 249 N.J. 253, 273-74 (2021) ("By not demanding the witness's testimony, the defendant waives his [or her] confrontation right."). However, our determination does not preclude defendant from raising the issue at any retrial on remand.

Defendant also argues Perillo's trial testimony regarding the content of the reports amounted to inadmissible expert opinion testimony because he testified

based on his experience rather than his personal observations, and he was not qualified as an expert witness at trial. She further claims Perillo offered impermissible ultimate opinion as to defendant's guilt.

Perillo was qualified by the court as an expert on the Sears computer system, the company's record keeping, and its record retention policy at the N.J.R.E. 104 hearing at which the court determined S-1 through S-3 were admissible at trial. During his trial testimony, Perillo restated his qualifications as an expert in those areas, but he was not offered as an expert. Without objection, defendant nonetheless allowed Perillo to offer testimony concerning the Sears computer system, retention system, and related issues, and waited until his testimony was completed to move to strike it all as inadmissible expert opinion.

To the extent Perillo offered expert opinion testimony, he should have been properly qualified as an expert. See N.J.R.E. 702; see also Townsend v. Pierre, 221 N.J. 36, 53 (2015) (explaining requirements for admission of expert opinion testimony). It is, however, unnecessary to decide whether any error in the admission of any expert opinion testimony he may have offered constituted harmless error, see, e.g., State v. Hyman, 451 N.J. Super. 429, 457 (App. Div. 2017) (finding failure to qualify witness as an expert was harmless error where

34

the evidence otherwise established the witness was an expert); State v. Kittrell, 279 N.J. Super. 225, 236 (App. Div. 1995) (holding "[b]ecause enough evidence was presented to qualify [the witness] as an expert in this area, the trial court's error in failing to specifically qualify him as an expert was harmless"), because on remand the court shall consider anew whether any testimony that may be offered by Perillo or any other witness constitutes expert opinion and whether the proffered witness qualifies to provide the opinion under N.J.R.E. 702.

Defendant also argues Perillo improperly offered testimony as to defendant's guilt while describing the content of the exhibits in two instances. Relying on information in the reports marked as exhibits S-1 through S-3, Perillo testified, "we had a number of fraudulent transactions for [records of returns] for deliveries that Ms. Watson—that we thought Ms. Watson had done. She had used somebody else's number at that time[,]" and "[w]hat Ms. Watson was doing, she was charging another unit—she was charging our online business . . . so [the] Swedesboro inventory would balance."

We do not consider the merits of defendant's argument because she did not object to Perillo's testimony at trial and the issue does not go to the court's jurisdiction or involve a matter of great public interest. See State v. Robinson, 200 N.J. 1, 20 (2009). Nonetheless, we remind the court that at any trial on

remand, a witness shall not be permitted to offer testimony expressing "a belief in defendant's guilt" or "an opinion on matters that [are] not beyond the understanding of the jury." State v. McLean, 205 N.J. 438, 463 (2011); see also, State v. Watson ___ N.J. Super. ___, ___ (App. Div. 2022) (slip op. at 83) (explaining "it is impermissible for a police witness to testify at trial as to defendant's guilt or an ultimate issue to be decided by the jury").

V.

Defendant also argues the court erred by instructing the jury that if it sought a playback of defendant's recorded interrogation by the police, it would be required to review the entire recording. This instruction was founded on the court's understanding it was not technologically possible to play only the specific portions of the recording that might be requested by the jury during its deliberations.

Although they "have broad discretion as to whether and how to conduct read-backs and playbacks," trial "[c]ourts should honor a jury's specific request to hear only limited parts of a witness'[s] testimony." State v. Miller, 205 N.J. 109, 122-23 (2011) (emphasis added). Here, defendant did not object to the court's statement to the jury, and, for that reason, and also because we remand for a new trial, we do not consider the merits of her argument. See Robinson,

200 N.J. at 20. In any event, at any retrial the court shall assess the technology and, to the extent reasonable and practicable, impose upon the parties the obligation to present recordings in a format permitting the playing of only those portions requested by a jury during deliberations.

Defendant's final arguments address the court's sentencing following her conviction. These issues are mooted by our remand for new trial. We note only that in the event defendant is convicted on remand, the court shall conduct a hearing to determine the appropriate amount of restitution if it orders restitution as a condition of the sentence imposed. State v. Paladino, 203 N.J. Super. 537, 547 (App. Div. 1985).

To the extent we have not expressly referred to or addressed any of defendant's remaining arguments, we find they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part, reversed in part, and remanded for a new trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION